UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOSE BERNAZARD,

                     Petitioner,

                                   **MEMORANDUM & ORDER**
    - against -                         22-CV-3176 (PKC)

SUPERINTENDENT MARK MILLER,

                    Respondent.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Petitioner Jose Bernazard ("Petitioner"), appearing *pro se*, petitions this Court for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his convictions for second-

degree attempted murder under New York Penal Law §§ 110 and 125.25(1) and first-degree

burglary under New York Penal Law § 140.30(2), and his revised aggregate sentence of 35 years'

custody entered on November 25, 2020 by the Appellate Division, Second Department.  (*See*

Petition ("Pet."), Dkt. 1, at 1–6.)  For the reasons set forth below, the petition is denied.

## BACKGROUND

### I.    Underlying Facts[1]

       On June 16, 2013, Petitioner was arrested after an altercation in the home of Christina

Rodriguez ("Rodriguez"), involving Petitioner, Rodriguez, Rodriguez's minor son, and an off-

duty New York City Police Department ("NYPD") officer, Joseph Koch ("Officer Koch").  (*See*

---

[1] Because Petitioner has already "been found guilty of the crime[s] charged," the Court construes the facts "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State[.]").

Tr. 2[2], Dkt. 11-5, at ECF 1625:1–15; *id.* at ECF 1416:24–25.)

In 2011, Petitioner and Rodriguez dated, and they lived together for approximately a month before Rodriguez told Petitioner to move out. (*See id.* at ECF 1229:11–1230:23.) On January 26, 2012, after Petitioner had moved out, Rodriguez and her son were in their home, asleep, when Petitioner woke Rodriguez by punching her in the face and choking her. (*Id.* at ECF 1231:21–1233:25.) Rodriguez's son alerted their landlord who lived upstairs, who then called the police, which led to Petitioner being arrested. (*See id.* at ECF 1233:15–25.) Rodriguez subsequently received an order of protection against Petitioner. (*See id.* at ECF 1234:11–15.)

Petitioner repeatedly violated the protection order. On March 23, 2012, Petitioner approached Rodriguez on the street, and when Rodriguez refused to talk to him, Petitioner slapped Rodriguez in the face. (*See* Tr. 2, Dkt. 11-5, at ECF 1235:6–1236:6.) Petitioner fled, and Rodriguez called the police. (*Id.* at ECF 1236:8–11.) On March 25, 2012, Petitioner appeared outside of Rodriguez's home seeking to talk to her, causing Rodriguez to run inside and to ultimately file a police report. (*Id.* at ECF 1237:3–21.) On July 18, 2012, Petitioner repeatedly texted and called Rodriguez, prompting Rodriguez to file another police report. (*Id.* at ECF 1238:11–25.) And on December 15, 2012, Petitioner again approached Rodriguez on the street, this time punching her in the face until Rodriguez fell to the ground, after which Petitioner

---

[2] "Tr." generally refers to the transcript of the trial court proceedings. The number immediately following "Tr." refers to the relevant transcript section. More specifically, "Tr. 1, Dkt. 11-4" refers to the first transcript of Petitioner's trial court proceedings, and "Tr. 2, Dkt. 11-5" refers to the second and last transcript of Petitioner's trial court proceedings. The "ECF" page numbers following the transcript identifier refer to the "PageID" number in the upper right corner of each filed document, generated by the Court's CM/ECF docketing system, and not the document's internal pagination. The numbers following the colon correspond to the line numbering on the left side of each page of the transcript, where applicable.

continued assailing her.  (*Id.* at ECF 1239:4–25.)  When Petitioner eventually left, Rodriguez called the police.  (*Id.* at ECF 1240:10–15.)

These events came to a head on June 16, 2013.  That day, Petitioner entered Rodriguez's home through an open window after Rodriguez refused to speak to him on the phone.  (Tr. 1, Dkt. 11-4, at ECF 462:12–24; *id.* at ECF 1157:14–22; Tr. 2, Dkt. 11-5, at ECF 1248:7–14.)  Petitioner beat Rodriguez and her son, inflicting a laceration on Rodriguez's head and bruising her son's face.  (*See* Tr. 2, Dkt. 11-5, at ECF 1243:17–1248:5; *id.* at ECF 1249:1–4.)  Rodriguez's son fled outside and yelled for help.  (*See id.* at ECF 1622:10–1623:3.)

NYPD Officer Koch, who was off duty, was sitting outside two doors down from Rodriguez's house.  (*See id.* at ECF 1612:1–11; *id.* at ECF 1615:21–1616:6, *id.* at ECF 1621:4–10.)  Upon hearing Rodriguez's screams and her son's cries for help, Officer Koch ran to Rodriguez's home and entered, where he encountered Petitioner holding Rodriguez by the neck.  (*See id.* at ECF 1621:18–23; *id.* at ECF 1625:18–1626:4.)  Officer Koch drew the gun he was carrying and a struggle ensued, during which Petitioner grabbed the gun, tried to point it at Officer Koch's chest less than a foot away, and said to Officer Koch, "[N]ow I am going to kill you, too."  (*See id.* at ECF 1631:3–25.)  In the struggle, both Petitioner and Officer Koch were shot.  (*Id.* at ECF 1633:9–12; *id.* at ECF 1635:16–19.)  The police arrived, and Petitioner was arrested.  (*See id.* at ECF 1416:24–25; *id.* at ECF 1637:12–14.)  Rodriguez and Officer Koch were taken to the hospital and treated for their injuries.  (Tr. 1, Dkt. 11-4, at ECF 460:21–461:5; Tr. 2, Dkt. 11-5, at ECF 1638:6–17.)

## II.    Rodriguez's Initial Cooperation with the District Attorney's Office

The next day, while Rodriguez was still in the hospital, Queens County Assistant District Attorney ("ADA") Michelle Kaszuba ("ADA Kaszuba") audio-recorded a sworn statement by

Rodriguez regarding the incident.  (Tr. 2, Dkt. 11-5, at ECF 1206:1–1209:21.)  Rodriguez was cooperative during the interview.  (*Id.* at ECF 1206:10–24.)  Several days after Rodriguez left the hospital, Queens County ADA Keshia Espinal ("ADA Espinal") met with Rodriguez as well.  (*See* Tr. 1, Dkt. 11-4, at ECF 434:16–19; *id.* at ECF 462:13–17.)  Rodriguez was "nice and pleasant," "compli[ed]" with ADA Espinal's questions, and explained that she was tired of Petitioner's abuse.  (*Id.* at ECF 434:22–435:13; *id.* at ECF 436:11–24.)

As requested by the District Attorney's Office, Rodriguez testified before a grand jury in the Supreme Court of the State of New York, Queens County, on June 20, 2013 and on July 8, 2013.  (*See id.* at ECF 441:10–12; *id.* at ECF 446:6–10; *id.* at ECF 464:23–25.)  Rodriguez testified about her history with Petitioner, including the January 26, 2012, March 23, 2012, March 25, 2012, July 18, 2012, December 15, 2012, and June 16, 2013 incidents.  (*See id.* at ECF 437:3–441:13.)  The grand jury indicted Petitioner for offenses committed on each of those dates.  (*Id.*; Indictments, Dkt. 11-2, at SR 194–217.[3])

III.   **Rodriguez's Change of Heart**

Around September 23, 2013, while the District Attorney's Office's investigation of Petitioner was continuing, ADA Espinal noticed that Rodriguez had not returned one of ADA Espinal's phone calls, which was unusual.  (*See* Tr. 1, Dkt. 11-4, at ECF 450:2–19.)  In an effort to determine what was going on, ADA Espinal subpoenaed Petitioner's visitor logs, telephone logs, and recorded telephone calls from Rikers Island, where Petitioner was being held.  (*Id.* at ECF 450:4–5; *id.* at ECF 450:20–452:21; *id.* at ECF 469:20–470:9.)  ADA Espinal recognized

---

[3] Certain documents are stamped in the lower right corner with "SR" followed by a sequence of numbers.  Where such stamping exists, the Court refers to it instead of the document's internal pagination.

4

Rodriguez's phone number from the call records and Petitioner's and Rodriguez's voices on the recorded calls.  (*See id.* at ECF 452:19–21.)

ADA Espinal subpoenaed Rodriguez to meet with her on October 21, 2013.  (*Id.* at ECF 453:15–20.)  When they met, Rodriguez's demeanor was completely different from their prior interactions.  (*Id.* at ECF 453:23–25.)  Rodriguez was now "[n]asty, very confrontational," "couldn't look [ADA Espinal] in the eye," and "refus[ed] to answer any questions."  (*Id.* at ECF 454:1–2; *id.* at ECF 474:9–14; *id.* at ECF 475:3–10.)  Rodriguez told ADA Espinal that she had to leave for an appointment, but ADA Espinal saw Rodriguez later that day sitting in the courtroom for one of Petitioner's pre-trial hearings.  (*Id.* at ECF 455:19–456:3; *id.* at ECF 475:6–15.)  ADA Espinal ended up submitting a *Brady* disclosure to Petitioner's counsel based on Rodriguez's changed behavior and their brief conversation.  (*Id.* at ECF 454:3–7.)

ADA Espinal and Rodriguez did not speak again until August 12, 2014, when Rodriguez asked ADA Espinal for a copy of her order of protection against Petitioner.  (*Id.* at ECF 456:4–457:5.)  During that conversation, Rodriguez began telling ADA Espinal "a completely different version of what happened" on June 16, 2013, i.e., that "Officer Koch didn't ID himself as a police officer, that he was drunk, he was stepping over his feet drunk and that had he identified himself as a police officer, this wouldn't have happened."  (*See id.* at ECF 457:1–5; *id.* at ECF 479:7–11.)  Rodriguez said that she would testify only as to what Petitioner did to her.  (*Id.* at ECF 479:11–13.)  ADA Espinal filed a second *Brady* disclosure based on Rodriguez's remarks.  (*Id.* at ECF 457:6–9.)

## IV.   *Sirois* Hearing and Petitioner's Contacts with Rodriguez

Given Rodriguez's sudden reticence about testifying, the prosecution sought a *Sirois* hearing to determine whether Rodriguez's sworn statement to ADA Kaszuba and testimony before

the grand jury could be admitted at trial.[4]  (*Id.* at ECF 395:2–3.)  At the hearing, which was held across three days on July 20, 2015, September 11, 2015, and September 25, 2015, the court heard evidence that Rodriguez had fully cooperated with the prosecution from the date of the June 2013 incident through September 2013, when Petitioner began calling Rodriguez from Rikers Island despite the order of protection that was in place.  (*See, e.g.*, Tr. 1, Dkt. 11-4, at ECF 434:20–435:13; *id.* at ECF 446:14–25; *id.* at ECF 451:11–13.)  In those recorded calls, 16 of which were played at the *Sirois* hearing, (*id.* at ECF 424:3–425:15), Petitioner told Rodriguez throughout September 2013 not to "say anything that's gonna be towards" Petitioner in court, (Reply,[5] Dkt. 15, at 6); advised Rodriguez to "never testify against [Petitioner] in court," (*id.*); told Rodriguez to "stay away" from the prosecutor (*id.*); cried, told Rodriguez he loved her, and complained to Rodriguez about getting "nothing back" from her in response, (*see id.*); told Rodriguez he was scared of losing her and tiring of telling her he loved her, (*id.* at 8); and told Rodriguez she was his most important witness, (*id.* at 9).  The court heard evidence that by several weeks before the October 21, 2013 meeting between ADA Espinal and Rodriguez, Rodriguez told Petitioner that she was helping him "because it's the right thing to do," (*id.* at 11).  The court also heard evidence that by the time of the October 21, 2013 meeting, Rodriguez was no longer willing to cooperate with the prosecution, (*see id.*).

---

[4] *Sirois* hearings are also known as *Geraci* hearings, and *Mastrangelo* hearings are the federal equivalent.  *Grayton v. Ercole*, 691 F.3d 165, 168 n.1 (2d Cir. 2012) (first citing *People v. Geraci*, 649 N.E.2d 817 (N.Y. 1995), then citing *United States v. Mastrangelo*, 693 F.2d 269 (2d Cir. 1982)) (explaining the naming convention).  Such hearings are prompted by the prosecution's accusation that a defendant has secured a witness's refusal or unavailability to testify through improper means.  *See Geraci*, 649 N.E.2d at 819 n.1.

[5] Petitioner's sole memorandum of law was filed as a reply in support of his petition. (Reply, Dkt. 15; *see* Dkt. 14 (requesting an extension of time for submission of reply brief).) Although it is labeled "Memorandum of Law," the Court refers to it herein as Petitioner's "Reply."

At the conclusion of the *Sirois* hearing, the court held that the prosecution had "established, not only by clear and convincing evidence, but overwhelmingly, that the defendant began calling [Rodriguez] from Rikers Island . . . in violation of a full order of protection," and that, in itself, "the circumstantial evidence of calls being made, without knowing their content, could be sufficient to warrant a finding that [Petitioner's] misconduct induced [Rodriguez's] subsequent lack of cooperation with the prosecutors." (*Sirois* op., Dkt. 11-3, at SR 243–44.)  But, the court went on to find that "there is more":

> The actual content of 16 of those phone calls, tape-recorded by the Dept. of Correction, reveals the full extent of the defendant's efforts to induce the complainant not to testify against him. Within the context of a relationship fraught with domestic violence (see *P v. Santiago*, *supra*), as told to ADA Espinal by the complainant, with multiple incidents during the year and a half before the assault alleged in this indictment occurred, and including a broken nose, the defendant's push and pull on the complainant emotionally in his calls demonstrates his attempt to enlist her aid, manipulate her to "stand by him" and "not to let anything come between" them, through a combination of sweet talk, begging, guilt trips, declarations of love, and warnings against others. The defendant exhorted the complainant in his calls that he needed her "to work with me", to "stop holding back", that he needed her "to maintain" because it was hard for him in jail; that he needed her to "step up and believe in me". Not so subtly, the defendant reminded the complainant that he would "fight to the last drop" and that he was "coming home".
>
> In addition to numerous conversations along these lines, the defendant revealed his own misconduct by saying he didn't want to talk on the phone about "speaking to them" when the complainant said she was subpoenaed and would get a lawyer; but finally became more blunt in a later conversation by asking if that "person hasn't called", the "person trying to contact you, and then finally, "The D.A." When the complainant said no, the defendant said point blank, "don't say nothin' - not a word".
>
> The defendant continued, in the many calls to the complainant, to try to make her feel sorry for him (["]You're gonna give up on me?") as well as complimenting her (["]You're a strong woman"), and exhorting her to stay the course ("We need to stay in contact. No sidetracks" "You spoke to the lawyers? They know you're trying to help me". "Gonna check up on you[]. . . Don't fold or step back . . . Hold your ground . . . Don't let anybody distract you").

(*Id.* at SR 244–46.)  The court continued:

> The defendant even went so far as to ask the complainant to marry him, offer a trip to Aruba, and talk about buying a house for her. In between protestations of love and constant statements of how much he missed her and needed her, the defendant continued to warn the complainant "not to say things they don't know in Court" and to "just stay away from the D.A. as far as you can", when she told him she was going to be in court one day.  Over time, as the defendant believes that the complainant becomes less responsive to him, he becomes more aggressive and accusatory toward her ("Don't ignore me! . . . we need each other . . . I'm trying to reach you!" "I need you to maintain . . . please – please – don't abandon me." "You gotta help me get home").

(*Id.* at SR 246; *see* Reply, Dkt. 15, at 6 (conceding that "Petitioner advised [Rodriguez] to 'stay away' from the prosecutor").)

The court found that, "[b]ased on the credible testimony of ADA Espinal, the People established by clear and convincing evidence, that [Rodriguez's] lack of cooperation, including the prosecution's need to file two *Brady* disclosures, developed only after defendant's telephone campaign was in full swing." (*Sirois* op., Dkt. 11-3, at SR 247.)  The court ultimately concluded that Petitioner "forfeited, by his misconduct, his right of confrontation and his right to assert the evidentiary rules as to the exclusion of hearsay testimony," and permitted introduction at trial of Rodriguez's audiotaped interview with ADA Kaszuba as well as Rodriguez's grand jury testimony.  (*Id.* at SR 248–49.)

## V.    Trial

At trial, the prosecution called 22 witnesses, including Officer Koch, in addition to Rodriguez's recorded statement to ADA Kaszuba and her grand jury testimony, which was read into the record pursuant to the court's *Sirois* ruling.  (*See* Tr. 2, Dkt. 11-5, at ECF 1228:4–1265:17; *id.* at ECF 2001:1–24.)  Ultimately, the jury convicted Petitioner of second-degree attempted murder as to Officer Koch and first-degree burglary as to Rodriguez, the offenses that are the subject of the instant habeas petition.  (*See* Verdict Sheet, Dkt. 11-2, at SR 218–19.)  The jury also convicted Petitioner of first-degree attempted assault, second-degree assault, first-degree stalking,

two counts of aggravated criminal contempt, two counts of third-degree assault, criminal obstruction of breathing or blood circulation, second-degree criminal trespass, fourth-degree criminal mischief, and three counts of second-degree criminal contempt, none of which are the subject of the instant petition.  (*Id.* at SR 219–20.)

Initially, Petitioner was sentenced to a total of 59 and 1/3 to 64 years imprisonment, comprised of, as relevant here, consecutive sentences of 25 years for second-degree attempted murder as to Officer Koch, 25 years for first-degree burglary as to Rodriguez, seven years for second-degree assault of Rodriguez's son, and between two and one-third and seven years for aggravated criminal contempt.  (*See* Tr. 2, Dkt. 11-5, at ECF 2036:16–22.)  The court ordered Petitioner's sentences for the remaining counts to be served concurrently with the consecutive counts.  (*Id.* at ECF 2036:16–23.)

## VI.    Direct Appeal

Petitioner filed a direct appeal to the Appellate Division, Second Department.  (App. Div. Br., Dkt. 11-1, at SR 001.)  On appeal, Petitioner argued that: (1) his second-degree assault conviction was legally insufficient; (2) the prosecution failed to prove that he caused Rodriguez's unavailability because evidence from the *Sirois* hearing demonstrated that she had decided on her own to help him; (3) his consecutive sentence for first-degree burglary was illegal; and (4) his sentences were excessive and vindictive.  (*See id.* at SR 003.)

On November 25, 2020, the Appellate Division modified the trial court's judgment by vacating Petitioner's second-degree assault conviction for insufficient evidence, by reducing Petitioner's 25-year sentence for burglary to 10 years, and by modifying Petitioner's aggravated criminal contempt sentence to run concurrently with his attempted second-degree murder conviction, resulting in a modified aggregate sentence of 35 years.  *People v. Bernazard*, 136

N.Y.S.3d 397, 399 (N.Y. App. Div. 2020).  As to the remaining grounds for appeal, the Appellate

Division affirmed the trial court's *Sirois* ruling, holding that the prosecution had proved by clear

and convincing evidence that Petitioner wrongly used his relationship with Rodriguez to cause her

to change her testimony.  *See id.* at 401.

On March 18, 2021, the Court of Appeals denied Petitioner leave to appeal the Appellate

Division's decision.  (Pet., Dkt. 1, at 2–3); *People v. Bernazard*, 36 N.Y.3d 1095, 1095 (N.Y.

2021).  Petitioner did not petition the United States Supreme Court for a writ of certiorari.

## VII.   The Instant Petition

Petitioner's instant habeas petition was timely filed on May 23, 2022.[6]  (Pet., Dkt. 1, at

ECF 16.)

---

[6] The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on petitions seeking habeas relief from a state court judgment.  28 U.S.C. § 2244(d)(1).  The one-year period runs from the date on which one of the following four events occurs, whichever is latest: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. §§ 2244(d)(1)(A)–(D).  A judgment of conviction becomes "final" within the meaning of 28 U.S.C. § 2244(d)(1)(A) upon completion of a defendant's direct appeal in the state's highest court and either (a) completion of proceedings before the United States Supreme Court if the petitioner chooses to file for a writ of certiorari, or (2) the expiration of the 90-day time period to seek such a writ.  *See Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001); U.S. Sup. Ct. R. 13(1).  A *pro se* prisoner's habeas petition is deemed filed at the moment he gives it to prison officials for mailing to the court.  *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (per curiam).  Here, Petitioner's state court judgment became final on June 16, 2021, the day on which the 90-day period for him to seek a writ of certiorari expired.  Thus, Petitioner's filing of this habeas action on May 18, 2021, which was within a year after June 16, 2021, was timely.

## LEGAL STANDARDS

A federal district court may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In order to obtain relief, such a petitioner must demonstrate, *inter alia*, that he has: (1) exhausted his potential state remedies; (2) asserted his claims in his state appeals such that they are not procedurally barred from federal habeas review; and (3) satisfied the deferential standard of review set forth in AEDPA, if his appeals were decided on the merits.  *See, e.g.*, *Georgison v. Donelli*, 588 F.3d 145, 153 (2d Cir. 2009); *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 365–66 (E.D.N.Y. 2013).

### I.      Exhaustion

Before seeking federal habeas relief, a state habeas petitioner must first exhaust his state remedies by fairly presenting his constitutional claims to the state courts.  *See* 28 U.S.C. § 2254(b)(1)(A); *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010).  A petitioner fairly presents a constitutional claim to the state courts when he presents the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.  *See Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014).

### II.     Procedural Default

A petitioner's failure to include claims on direct appeal is a procedural default that precludes raising those claims in a federal habeas petition.  *See Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Teague v. Lane*, 489 U.S. 288, 298–99 (1989).  To overcome the bar to federal habeas review of a claim that has been procedurally defaulted in state court, a petitioner must "demonstrate either cause and actual

prejudice, or that he is actually innocent." *Gomez v. United States*, 87 F.4th 100, 107 (2d Cir. 2023) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted)).  Where a petitioner makes no effort to meet this standard, a court cannot grant habeas relief.  *See Angeles v. Greiner*, 267 F. Supp. 2d 410, 416 (E.D.N.Y. 2003); *Collins v. Artus*, No. 08-CV-1936, 2009 WL 2633636, at \*9 (S.D.N.Y. Aug. 26, 2009).

## III.    AEDPA Deference

Where a state court has reached the merits of a claim asserted in a Section 2254 petition, the state court's decision is entitled to deference under AEDPA and the petition must be denied unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d); *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017).

A state court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,'" the State court arrived at an opposite result. *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  A state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  "[A]n *unreasonable* application of federal law," however, "is different from an *incorrect* application of federal law." *Id.* at 410; *see Grayton*, 691 F.3d at 174 ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable.").  A federal court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's

decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Orlando v. Nassau Cnty. Dist. Att'ys Off.*, 915 F.3d 113, 120–21 (2d Cir. 2019).

## IV.   *Pro Se* Petitions

Because Petitioner in this case is *pro se*, the Court liberally construes the Petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  At the same time, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  *Id.* at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *accord O'Neal v. New York*, 465 F. Supp. 3d 206, 216 (E.D.N.Y. 2020).

## DISCUSSION

Petitioner challenges his convictions based on a litany of overlapping grounds for relief, which the Court construes as the following: (1) the trial evidence was insufficient to prove Petitioner's attempted murder and burglary charges; (2) the admission of Rodriguez's sworn interview and grand jury testimony violated Petitioner's right to confront adverse witnesses; (3) the admission of Rodriguez's sworn interview and grand jury testimony violated Petitioner's due process rights; (4) Petitioner's sentences were unduly harsh, excessive, and vindictive because they were consecutive; and (5) Petitioner's appellate counsel were ineffective.  (Pet., Dkt. 1, at 5–6.)[7]  The Court finds that none of Petitioner's claims has merit and therefore denies the Petition in full.

---

[7] Petitioner's additional claim that the verdict was against the weight of the evidence is not cognizable on federal habeas review.  *See Lopez v. Superintendent of Five Points Corr. Facility*, No. 14-CV-4615 (RJS) (JLC), 2015 WL 1300030, at *12 (S.D.N.Y. Mar. 23, 2015), *R. & R. adopted*, No. 14-CV-4615 (RJS) (JLC), 2015 WL 2408605 (S.D.N.Y. May 20, 2015) ("It is well-established that a weight of the evidence claim is exclusively a matter of state law and therefore presents no federal question reviewable by a federal habeas court." (collecting cases)); *Blake v. Martuscello*, No. 10-CV-2570 (MKB), 2013 WL 3456958, at *9 (E.D.N.Y. July 8, 2013) ("It is

I.      **Sufficiency of the Evidence Under the Fourteenth Amendment's Due Process Clause**

Petitioner argues that the evidence adduced at trial was insufficient to support his convictions for attempted murder and burglary.  (*See id.*)  The Court construes this claim as contesting the sufficiency of the evidence under the Fourteenth Amendment's Due Process Clause. Petitioner concedes that this claim is unexhausted.  (Reply, Dkt. 15, at 16–17.)  As such, it is procedurally defaulted.[8]  *See Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012).

Even if this claim were not procedurally defaulted, it fails on the merits.  A petitioner "bears a heavy burden" when challenging the legal sufficiency of the evidence to support his state conviction.  *See United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009); *Einaugler v. Sup. Ct. State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997).  On habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319; *see Gutierrez v. Smith*, 702 F.3d 103, 113 (2d Cir. 2012). "[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a

---

well settled that a 'weight of the evidence' claim . . . is not reviewable in [a] federal habeas proceeding." (collecting cases)); *Kearse v. Artuz*, No. 99-CV-2428 (TPG), 2000 WL 1253205, at *1 (S.D.N.Y. Sept. 5, 2000) (dismissing challenge to verdict against the weight of the evidence on the ground that "[d]isagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief").  Furthermore, as Petitioner concedes, this claim is also unexhausted and thus procedurally defaulted.  (*See* Reply, Dkt. 15, at 16 (noting that Petitioner's direct appeal did not raise a weight of the evidence argument).)  As discussed *infra* n.7, Petitioner has failed to demonstrate cause or actual prejudice to overcome this procedural default.  *See Gomez*, 87 F.4th at 107.

[8] Petitioner argues that the ineffective assistance of his appellate counsel was cause and prejudice to excuse his default.  (*See* Reply, Dkt. 15, at 16.)  That argument is foreclosed by Petitioner's failure to satisfy the "cause and prejudice" standard with respect to his actual ineffective assistance claim.  *See infra* Discussion Section V; *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000) (stating that an ineffective assistance claim not fairly presented to the state courts may serve as cause to excuse a default only if the petitioner can satisfy the "cause and prejudice" standard with respect to the ineffective assistance claim itself).

conviction." *United States v. Frampton*, 382 F.3d 213, 222 (2d Cir. 2004) (citing *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979)); *accord Edwards v. Jones*, 720 F.2d 751, 754 (2d Cir. 1983).

A rational trier of fact could have found that the trial evidence was sufficient to prove the elements of attempted murder as to Officer Koch.  Under New York law, to be guilty of attempted murder in the second degree, a person must, with intent to cause the death of another person, "engage[] in conduct which tends to effect the commission of such crime."  N.Y. Penal Law § 110; *see* N.Y. Penal Law § 125.25(1).  A rational trier of fact could have found beyond a reasonable doubt, based on the trial evidence, that Petitioner intended to kill Officer Koch when he said to Koch, "[N]ow I am going to kill you, too," and tried to point Officer Koch's gun at Officer Koch's chest, less than a foot away.  (Tr. 2, Dkt. 11-5, at ECF 1631:4–25); *Cabrera v. New York*, No. 10-CV-4440, 2013 WL 5205613, at *6 (E.D.N.Y. Sept. 12, 2013) (collecting New York cases finding intent to kill where defendant and victim quarreled and defendant pointed gun at victim in close range, and where defendant made statements expressing intent to kill and pointed a gun at victim, among other situations).

Likewise, a rational trier of fact could have found the evidence sufficient to prove the elements of burglary in the first degree as to Rodriguez.  Under New York law, a defendant is guilty of burglary in the first degree when he "knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein," and, "in effecting entry or while in the dwelling or in immediate flight therefrom," he "[c]auses physical injury to any person who is not a participant in the crime."  N.Y. Penal Law § 140.30(2).

At trial, the prosecution presented eyewitness accounts of Plaintiff entering Rodriguez's home despite the order of protection requiring him to stay away from Rodriguez, and of Plaintiff

15

beating and injuring Rodriguez and Rodriguez's son. (*See, e.g.*, Tr. 1, Dkt. 11-4, at ECF 458:14–18; *id.* at ECF 1157:14–22; Tr. 2, Dkt. 11-5, at ECF 1243:17–1248:5; *id.* at ECF 1249:1–4; *id.* at ECF 1374:21–1376:2); *see also Wegman v. West*, No. 04-CV-312 S, 2007 WL 2789733, at *5 (W.D.N.Y. Sept. 24, 2007) (holding that evidence was sufficient to support burglary in the first degree where habeas petitioner had been barred from entering complainant's home under an order of protection, did so anyway, was armed, and shot someone in the home); *Reid v. Miller*, No. 02-CV-2895, 2003 WL 22383097, at *4 (S.D.N.Y. Oct. 20, 2003) (holding that evidence was sufficient to support burglary in the first degree where habeas petitioner had been barred from entering complainant's home under an order of protection, did so anyway, and assaulted complainant).  In sum, a rational trier of fact could have found each of the required elements beyond a reasonable doubt based on the evidence introduced at Petitioner's trial. *See Jackson*, 443 U.S. at 319; *Aguilar*, 585 F.3d at 656.

Petitioner is therefore not entitled to federal habeas corpus relief on the basis of insufficient evidence.

## II.    Sixth Amendment's Confrontation Clause

Petitioner argues that the state court violated his Sixth Amendment confrontation rights when it permitted Rodriguez's sworn interview and grand jury testimony to be presented at trial. (Pet., Dkt. 1, at 6.)  Petitioner presented this argument, through counsel, on direct appeal.  (App. Div. Br., Dkt. 11-2, at SR 047 (discussing Confrontation Clause).)  The Appellate Division upheld the trial court's decision to admit Rodriguez's testimony, holding that there was clear and convincing evidence that Petitioner had procured Rodriguez's unavailability to testify.[9]

---

[9] The Court "looks through" to the Appellate Division's opinion given that the Court of Appeals stated merely that Petitioner's application was "[d]enied." *Bernazard*, 167 N.E.3d at 1245.  If the last state court decision on the merits is not accompanied by reasons (*e.g.*, a one-word

*Bernazard*, 136 N.Y.S.3d at 401.  That decision on the merits is entitled to AEDPA deference.  28 U.S.C. § 2254(d); *see Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003).  Because Petitioner fails to identify a violation of clearly established federal law or an unreasonable determination of facts in light of the evidence presented, the Court rejects Petitioner's argument.

"The Sixth Amendment's Confrontation Clause provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him."  *Orlando*, 915 F.3d at 121 (internal quotation marks and alterations omitted).  "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination."  *United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009).  However, the Supreme Court has made clear that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation."  *Davis v. Washington*, 547 U.S. 813, 833 (2006).  Thus, a defendant waives his right to confront a witness against him when he "engage[s] . . . in wrongdoing that was intended to, and did, procure the unavailability of a witness."  *Giles v. California*, 554 U.S. 353, 367 (2008); *see Crawford v. Washington*, 541 U.S. 36, 62 (2004) ("[T]he rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds.").

The Supreme Court has yet to clarify the boundaries of the "waiver-by-misconduct" rule, but in the Second Circuit, the prosecution need only prove by a preponderance of the evidence that the defendant was responsible for a witness's unavailability.  *Mastrangelo*, 693 F.2d at 272, 274;

---

order, such as "affirmed" or "denied"), a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Scrimo v. Lee*, 935 F.3d 103, 111–12 (2d Cir. 2019) (looking through appellate court's denial of claim as "without merit" and "therefore consider[ing] the rulings and explanations of the trial judge").

*Perkins v. Herbert*, 596 F.3d 161, 173 n.9 (2d Cir. 2010).  In New York, courts apply a more exacting standard, where the prosecution must prove that the defendant caused the witness's unavailability, by clear and convincing evidence.  *People v. Geraci*, 85 N.Y.2d 359, 362 (N.Y. 1995) (holding that whether defendant rendered witness unavailable to testify "must be established by no less than 'clear and convincing evidence'"); *Perkins*, 596 F.3d at 173 n.9 (noting differences between the standards).  Therefore, a court's "finding of admissibility after a *Sirois* hearing applying [New York's] higher standard[,] . . . if correct, would also satisfy the [federal] constitutional standard."  *Francis v. Duncan*, No. 03-CV-4959, 2004 WL 1878796, at *17 (S.D.N.Y. Aug. 23, 2004).  Accordingly, the trial court's finding "may be overturned on habeas review only if (1)[ ] petitioner presents clear and convincing evidence that the court erred in its determination or (2) it was based on an unreasonable application of the facts."  *McClarin v. Smith*, No. 05-CV-2478, 2007 WL 2323592, at *9 (E.D.N.Y. Aug. 10, 2007) (quoting *Francis*, 2004 WL 1878796, at *18).

Petitioner fails to identify how the state court's decision regarding the *Sirois* issue was contrary to or an unreasonable application of federal law.  Surpassing the standard required by federal law, the state court found by clear and convincing evidence that Petitioner procured Rodriguez's unavailability to testify and thus waived his Confrontation Clause rights.  *Bernazard*, 136 N.Y.S.3d at 401.  Contrary to Petitioner's argument that "there is absolutely no proof petitioner caused Ms. Rodriguez not to testify," (Reply, Dkt. 15, at 18), the state court held a *Sirois* hearing where "overwhelming" evidence was presented establishing that Petitioner improperly caused Rodriguez's unavailability.  (*See generally Sirois* Tr., Dkt. 11-4, at ECF 392–490); *see also Turner v. Graham*, No. 18 Civ. 492, 2021 WL 1026384, at *11 (S.D.N.Y. Mar. 17, 2021).

18

At the hearing, the court heard evidence that Rodriguez had fully cooperated with the prosecution up until the point when Petitioner began calling Rodriguez repeatedly and telling her, *inter alia*, not to "say anything that's gonna be towards" him, to "stay away" from the prosecutor, and that Rodriguez was his most important witness—while simultaneously flattering her with declarations of love—which caused Rodriguez to change her mind about cooperating with the prosecution and to refuse to testify against Petitioner by the time she met with ADA Espinal on October 21, 2013. *See Bernazard*, 136 N.Y.S.3d at 401; (Reply, Dkt. 15, at 6–13). Although Petitioner argues that Rodriguez made her own decision to help Petitioner because it was "the right thing to do," (Reply, Dkt. 15, at 11), the state court's determination that Petitioner nevertheless procured her unavailability was a reasonable application of the facts, *see McClarin*, 2007 WL 2323592, at *10–11. Specifically, Petitioner's repeated exhortations to Rodriguez were clear and convincing evidence—indeed, *direct* evidence—that Petitioner procured Rodriguez's eventual refusal to testify and that he did so in blatant violation of an ongoing protective order. *See Ridgeway v. Conway*, No. 10-CV-6037, 2011 WL 3651147, at *10 (W.D.N.Y. Aug. 18, 2011) (holding that state court determination that petitioner prevented witness's testimony, based on both direct and circumstantial evidence of his motivation to do so, was reasonable); *Wilson v. Capra*, No. 20-4140-pr, 2023 WL 7179268, at *5 (2d Cir. Nov. 1, 2023) (summary order) (approving of circumstantial evidence as sufficient to demonstrate a petitioner's intent to render a witness unavailable); *Tatum v. Lempke*, 481 F. App'x 659, 661 (2d Cir. 2012) (summary order) (same).

Based on the evidence presented at the *Sirois* hearing, the trial court reasonably determined that Petitioner used his relationship with Rodriguez as leverage to procure Rodriguez's cooperation. *See Nelson v. Bell*, No. 19-CV-870 (TJM) (DJS), 2020 WL 10897535, at *4 (N.D.N.Y. Sept. 21, 2020) (agreeing that state court reasonably held that defendant waived right

to confront witness after he used his close relationship with her to manipulate her into changing her testimony); *Byrd v. Brown*, No. 09-CV-5755, 2010 WL 6764702 (GBD) (JCF), at *10 (S.D.N.Y. Oct. 25, 2010) ("It was not unreasonable for the trial court to determine that the petitioner's numerous phone calls—all in violation of an order of protection—as well as his visits to the [complainant], when viewed in the context of the abusive history between the petitioner and [complainant], were misconduct that procured [complainant's] unavailability at trial."), *R. & R. adopted*, 2011 WL 2162140 (S.D.N.Y. June 1, 2011). Petitioner's Confrontation Clause claim is accordingly meritless, and the Court denies relief on this basis.

## III.    Fair Trial Under Fourteenth Amendment's Due Process Clause

Petitioner also argues that the admission of Rodriguez's sworn interview and grand jury testimony violated his Fourteenth Amendment Due Process Clause right to a fair and unbiased trial.[10]  (Pet., Dkt. 1, at 6.)  Petitioner raised this claim, through counsel, on direct appeal.  (App. Div. Br., Dkt. 11-2, at SR 047 (referencing "U.S. Const. Amends. VI, XIV"); *see* Ct. App. Br., Dkt. 11-2, at SR 186 (seeking "leave to appeal . . . [on] all state and federal constitutional issues raised in [Petitioner's] appeal to the Appellate Division . . . [s]*ee* U.S. Const., Amend. V, VIII, XIV")); *Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (stating that even "a minimal reference to the Fourteenth Amendment," such as citation to the Fourteenth Amendment in a point

---

[10]  Although Respondent's opposition brief discusses Petitioner's "fair trial" claim as distinct from his Confrontation Clause and Due Process Clause claims, the Court construes Petitioner's fair trial arguments as subsumed by those two claims.  (*See* Pet., Dkt. 1, at 6 (alleging, in support of Confrontation Clause claim, that the denial of Petitioner's "opportunity to confront [Rodriguez] . . . den[ied] Petitioner a fair trial"; *id.* (alleging, in support of due process claim, that "allowing prejudicial evidence to be submitted . . . that should have been precluded" denied Petitioner the "opportunity to have a fair and unbiased trial"); Reply, Dkt. 15, at 18–19 (discussing preclusion only of Rodriguez's testimony).)  To the extent that Petitioner advances a different "fair trial" claim, (*cf.* Opp., Dkt. 10-1, at 29), it is procedurally defaulted, and Petitioner offers no cause to consider it.  *See O'Sullivan*, 526 U.S. at 848; *Hawthorne*, 695 F.3d at 197.

heading of petitioner's brief, "satisfies the exhaustion requirement" for habeas review purposes); *Gonzalez v. Sullivan*, 934 F.2d 419, 423 (2d Cir. 1991) (acknowledging that although "it would be better practice . . . when relying on a broad constitutional doctrine like the Fourteenth Amendment to support the claim with a factual premise and by citation to federal cases," citation to the Fourteenth Amendment fulfills the exhaustion requirement and allows for federal habeas review of such a claim).

For the reasons articulated above, the state court's decision to admit Rodriguez's sworn interview and grand jury testimony was not contrary to or an unreasonable application of federal law, and the Court rejects Petitioner's argument for relief on that basis. *Supra* Discussion Section IV (discussing *Sirois* hearing).

Given that there was clear and convincing evidence that Petitioner improperly procured Rodriguez's unavailability, *see id.*, Petitioner's due process claim is without merit.

## IV.   Unduly Harsh, Excessive, and Vindictive Sentence Under the Eighth Amendment

Petitioner further argues that the state court violated his Eighth Amendment right to be free from cruel and unusual punishment when it sentenced Petitioner to consecutive sentences. (Pet., Dkt. 1, at 6.) Petitioner raised this claim, through counsel, on direct appeal. (*See* App. Div. Br., Dkt. 11-2, at SR 063–065; Ct. App. Br., Dkt. 11-2, at SR 186.)

Petitioner's claims are not cognizable on federal habeas review. A petitioner may not obtain federal habeas relief by challenging his sentence as excessive when the sentence is permitted by state law. *See White v. Keane*, 969 F. 2d 1381, 1383 (2d Cir. 1992); *Diaz v. Herbert*, 317 F. Supp. 2d 462, 479–80 (E.D.N.Y. 2004) (citing *White*, 969 F. 2d at 1383); *Pina v. Kuhlmann*, 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003) (same); *accord Thompson v. Lamanna*, No. 18-CV-3540 (BMC), 2018 WL 4054874, at *2 (E.D.N.Y. Aug. 24, 2018). Nor does Petitioner contend that his

21

modified aggregate sentence of 35 years falls outside the range permitted by state law.  (*See generally* Pet., Dkt. 6; Reply, Dkt. 15.)

Here, the court was permitted by New York law to impose consecutive sentences because it found that Petitioner's convictions arose out of separate and distinct criminal acts.  *See* N.Y. Penal Law §§ 70.25(1) (stating that generally, "sentences imposed by the court shall run either concurrently or consecutively . . . in such manner as the court directs at the time of the sentence"), 70.25(2) (requiring only sentences "for two or more offenses committed through a single act or omission" to run concurrently) (as amended Feb. 19, 2016).  Furthermore, "there is 'no constitutionally cognizable right to concurrent, rather than consecutive, sentences.'" *United States v. McLean*, 287 F.3d 127, 136 (2d Cir. 2002) (quoting *United States v. White*, 240 F.3d 127, 135 (2d Cir. 2001)).  Accordingly, the state court's imposition of consecutive sentences was not contrary to, nor an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1); *Diaz*, 317 F. Supp. 2d at 479–80 ("[T]here is no federal constitutional violation to warrant habeas relief from the trial court's imposition of consecutive sentences because the sentences do not violate state law." (citing *White*, 969 F. 2d at 1383)).

As for Petitioner's claim that the state court was "vindictive," that claim provides no basis for habeas relief for the same reasons.  *See Wright v. Bell*, No. 18-CV-2222 (PKC), 2021 WL 3634778, at *4 (E.D.N.Y. Aug. 17, 2021) ("[I]t is well settled that no federal constitutional issue is presented where the sentence [of a state prisoner] is within the range prescribed by state law.").  This claim was squarely presented to the state court, and Petitioner fails to overcome the AEDPA deference accorded to the state court's ruling on the merits.  (*See* App. Div. Br., Dkt. 11-2, at SR 063–65 (arguing that "[t]he court's imposition of consecutive sentences . . . was unduly harsh, excessive, *and vindictive*" (emphasis added)); *see also id.* at SR 186 (seeking leave to appeal to

Court of Appeals on "all . . . issues raised in [Petitioner's] appeal to the Appellate Division, including the legality and excessiveness of his sentence")); *Golb v. Att'y Gen. of N.Y.*, 870 F.3d 89, 97 (2d Cir. 2017) ("[W]hen a state court denies a claim that was squarely presented, there is a strong presumption that the denial is 'on the merits.'"). Petitioner has presented no record evidence of vindictive sentencing, and, having reviewed the sentencing transcript, the Court finds no such statements by the trial court either. (*See generally* Tr. 2, Dkt. 11-5, at ECF 2005:1–2038:7.) Petitioner has not met his burden of proving that the state court acted contrary to or unreasonably applied federal law and is not entitled to habeas relief on this ground.

## V.    Ineffective Assistance of Appellate Counsel

Lastly, in his reply brief, Petitioner asserts a new and unexhausted claim of ineffective assistance of appellate counsel.  Petitioner alleges that:

> Petitioner's appellate counsel argued on direct appeal the sufficiency of evidence but purposely caused prejudice by not requesting a review of the sufficiency of evidence in totality that would show the evidence before the jury was not sufficient to support the charged crimes or conviction. . . .  The failures of counsel during state [appellate] proceedings amounted to ineffective assistance . . . .

(Reply, Dkt. 15, at 16–17.)  Petitioner concedes that this claim is unexhausted.  (*Id.*)  It is thus procedurally defaulted.  *Hawthorne*, 695 F.3d at 197.  Petitioner offers no independent argument of cause and prejudice to excuse his procedural default with respect to this claim.  *See DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006) ("The Supreme Court has held that ineffective assistance of appellate counsel claims cannot constitute 'cause' for procedural default unless first presented in state court as an independent constitutional claim.  In New York, this can be done by petitioning for a writ of coram nobis, which [Petitioner] has not done." (citations omitted)); *see also Collins*, 2009 WL 2633636, at *9.

Regardless, the Court construes this argument as an attempt to amend his habeas petition pursuant to Federal Rule of Civil Procedure 15, and denies the amendment as time-barred.  *Soto v. Conway*, 565 F. Supp. 2d 429, 439 (E.D.N.Y. 2008).   Because Petitioner's claim of ineffectiveness "asserts a new ground for relief supported by facts that differ in both time and type from those the original [petition] set forth," it does not "relate back" and thus is barred by AEDPA's one-year time limit.  *Mayle v. Felix*, 545 U.S. 644, 650 (2005); *accord Soto*, 565 F. Supp. 2d at 439; *Porter v. Greiner*, No. 00-CV-6047, 2005 WL 3344828, at *9–10 (E.D.N.Y. Nov. 18, 2005).  Even if it were not, an applicant is not deemed to have exhausted his state remedies if he has the right under state law to raise, "*by any available procedure*, the question presented."  28 U.S.C. § 2254(c) (emphasis added).  Petitioner did not raise his ineffective assistance of appellate counsel claim by coram nobis to the Appellate Division as permitted under New York law.  *See Clemente v. Lee*, 72 F.4th 466, 478 (2d Cir. 2023); *Monroe v. Griffin*, No. 16-CV-04788 (DC), 2023 WL 4665792, at *5 (E.D.N.Y. July 20, 2023).  Consequently, Petitioner's claim for habeas corpus relief based on ineffective assistance of counsel is denied.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, is denied.  Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen. of N.Y., Pa.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner had not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted) (quoting *Slack v. McDaniel*, 529 U.S. 473, 475 (2000)).  Additionally, the Court certifies, pursuant to 28 U.S.C. §

1915(a)(3), that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is therefore respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 15, 2024
       Brooklyn, New York

25